**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| STEVEN NEUMAN, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COBALT INTERNATIONAL ENERGY, INC., JOSEPH H. BRYANT, and JOHN P. WILKIRSON<br><br>Defendants, | **Civil Action No.: 4:14-cv-3488**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Steven Neuman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cobalt International Energy, Inc. ("Cobalt" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased Cobalt securities between February 21, 2012 and August 4, 2014, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.     Cobalt is an independent, oil-focused exploration and production ("E&P") company with a world-class below salt prospect inventory in the deepwater of the U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.  Primarily through highly targeted leasing strategy, which was the result of an in-depth, multi-year study of potential regional hydrocarbon accumulations within the deepwater U.S. Gulf of Mexico and select regions offshore West Africa, the Company has established a current portfolio of 132 identified, well defined prospects, comprised of 47 prospects located in the deepwater U.S. Gulf of Mexico and 85 prospects located in Blocks 9 and 21 offshore Angola and the Diaba Block offshore Gabon. In addition, on January 24, 2011, Cobalt announced that it had been conditionally awarded a 40% working interest and indicated as operator of Block 20 offshore Angola, on which the Company had identified 37 additional prospects.

3.     Offshore Angola, the Company purportedly executed Risk Services Agreements ("RSAs") for Blocks 9 and 21 with the national oil company of Angola, Sociedade Nacional de Combustíveis de Angola—Empresa Pública ("Sonangol"), as well as Sonangol P&P, Nazaki Oil and Gáz, S.A. ("Nazaki") and Alper Oil, Limitada ("Alper").  The RSAs govern 40% of Cobalt's

working interest in and operatorship of Blocks 9 and 21 offshore Angola and form the basis of exploration, development and production operations on these blocks.

4.    Block 9 is approximately 1 million acres (4,000 square kilometers) in size or approximately 167 U.S. Gulf of Mexico blocks and is located immediately offshore in the southeastern-most portion of the Kwanza basin. Water depth ranges from zero to more than 3,200 feet (1,000 meters).  Block 21 is approximately 1.2 million acres (4,900 square kilometers) in size or approximately 200 U.S. Gulf of Mexico blocks. The block is 30 to 90 miles (50 to 140 kilometers) offshore in water depths of 1,300 to 5,900 feet (400 to 1,800 meters) in the central portion of the Kwanza basin.

5.    In connection with the RSAs for Blocks 9 and 21 offshore Angola, two Angolan-based E&P companies were assigned as part of the contractor group by the Angolan government, Sonangol and Nazaki.  In the fall of 2010, the Company was purportedly "made aware of allegations of a connection between senior Angolan government officials" and Nazaki, which is a full paying member of the contractor group.  In March 2011, the SEC commenced an informal inquiry into these allegations, and in November 2011, a formal order of investigation was issued by the SEC related to Cobalt's operations in Angola.

6.    As a result of the November 2011 announcement of the SEC's formal investigation, the Company indicated that it was "fully cooperating with the SEC and DOJ" and that Cobalt additionally "conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA."  Cobalt also specifically noted that Nazaki had "repeatedly denied" allegations of a connection between Nazaki and senior Angola government officials.

7.      However, throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company conducted certain business activities in its Angolan operations in violation of the Foreign Corrupt Practices Act ("FCPA"); and (2) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

8.      On August 5, 2014, Cobalt disclosed in a filing with the SEC Form 8-K that it had received a notice from the Securities and Exchange Commission indicating the agency will bring an enforcement action against the Company over its Angolan operations.   Specifically, the Company disclosed:

> As previously disclosed, the Company is currently subject to a formal order of investigation issued in 2011 by the U.S. Securities and Exchange Commission (the "SEC") related to its operations in Angola. See the discussion under the caption "Risk Factors—We may be exposed to liabilities under the U.S. Foreign Corrupt Practices Act, and any determination that we violated the U.S. Foreign Corrupt Practices Act could have a material adverse effect on our business" in the Company's Annual Report on Form 10-K for the year ended December 31, 2013 for more information.
>
> In connection with such investigation, on the evening of August 4, 2014, the Company received a "Wells Notice" from the Staff of the SEC stating that the Staff has made a preliminary determination to recommend that the SEC institute an enforcement action against the Company, alleging violations of certain federal securities laws. In connection with the contemplated action, the Staff may recommend that the SEC seek remedies that could include an injunction, a cease-and-desist order, disgorgement, pre-judgment interest and civil money penalties. The Wells Notice is neither a formal allegation nor a finding of wrongdoing. It allows the Company the opportunity to provide its reasons of law, policy or fact as to why the proposed enforcement action should not be filed and to address the issues raised by the Staff before any decision is made by the SEC on whether to authorize the commencement of an enforcement proceeding. The Company intends to respond to the Wells Notice in the form of a "Wells Submission" in due course.

The Company has fully cooperated with the SEC in this matter and intends to continue to do so. The Company has conducted an extensive investigation into these allegations and the receipt of the Wells Notice does not change the Company's belief that its activities in Angola have complied with all laws, including the U.S. Foreign Corrupt Practices Act. The Company is unable to predict the outcome of the SEC's investigation or any action that the SEC may decide to pursue.

9.      On the news, shares in Cobalt fell $1.75 per share, or 10.96%, to close at $14.22 on August 5, 2014 on extremely heavy trading volume.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b).

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached certification, purchased Cobalt securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant Cobalt International Energy, Inc., is engaged in the exploration and production of oil-focused and below-salt exploration prospects.  Its project portfolio comprises North Platte, Heidelberg, and Shenandoah in the deepwater of the U.S. Gulf of Mexico; Cameia, Lontra, Mavinga, Bicuar, and Orca in the offshore Angola; and Diaman in the offshore Gabon. The Company has strategic relationship with TOTAL E&P USA, INC. Cobalt International Energy, Inc. was founded in 2005 and is based in Houston, Texas.  The Company trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CIE".

17.     Defendant Joseph H. Bryant ("Bryant") was, at all relevant times, the Company's Chief Executive Officer and Chairman of the Board of Directors.

18.     Defendant John P. Wilkirson ("Wilkirson") was, at all relevant times, the Company's Chief Financial Officer and Executive Vice President.

19.     The defendants referenced above in ¶¶ 17 – 18 are sometimes referred to herein as the "Individual Defendants."

20.     Defendant Cobalt and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

21.     On February 21, 2012, the first day of the Class Period, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2011. For the fourth quarter, the Company announced

a net loss of $51 million, or $0.13 per basic and diluted share, compared to a net loss of $30

million, or $0.09 per basic and diluted share, for the fourth quarter of 2010.  Cobalt reported a

net loss of $134 million, or $0.35 per basic and diluted share, for the year ended December 31,

2011, compared to a net loss of $136 million, or $0.39 per basic and diluted share, for the same

period in 2010.

22.    On February 21, 2012, the Company filed an annual report for the year ended

December 31, 2011 on a Form 10-K with the SEC signed by, among others, defendants Bryant

and Wilkirson and reiterated the Company's previously reported financial results and financial

position.  In addition, the Form 10-K contained certifications signed pursuant to the Sarbanes-

Oxley Act of 2002 ("SOX") by defendants Bryant and Wilkirson stating that the financial

information contained in the Form 10-K was accurate and disclosed any material changes to the

Company's internal control over financial reporting.

23.    The 2011 Form 10-K also specifically noted the SEC's investigation into the

Company's operations in Angola, stating:

> In the fall of 2010, we were made aware of allegations of a connection between
> senior Angolan government officials and one of these companies, Nazaki Oil and
> Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group.
> *Nazaki has repeatedly denied the allegations in writing*. In March 2011, the SEC
> commenced an informal inquiry into these allegations. To avoid non-overlapping
> information requests, we voluntarily contacted the U.S. Department of Justice
> ("DOJ") with respect to the SEC's informal request and offered to respond to any
> requests the DOJ may have. Since such time, we have been complying with all
> requests from the SEC and DOJ with respect to their inquiry. In November 2011,
> a formal order of investigation was issued by the SEC related to our operations in
> Angola. *We are fully cooperating with the SEC and DOJ investigations, have
> conducted an extensive investigation into these allegations and believe that our
> activities in Angola have complied with all laws, including the FCPA*.

24.    On April 16, 2012, the Company issued a press release responding to an article

published in the *Financial Times* on April 15, 2012 titled "Angola officials held hidden oil

stakes" and "Spotlight falls on Cobalt's Angola partner".  In the press release, Cobalt stated the following:

> HOUSTON, Apr 16, 2012 (BUSINESS WIRE) --Cobalt International Energy, Inc. ("Cobalt") (NYSE: CIE) today, in responding to two articles published by the Financial Times on April 15, 2012, titled "Angola officials held hidden oil stakes" and "Spotlight falls on Cobalt's Angola partner," ***strongly refuted any allegations of wrong doing and once again stood behind its principles of full compliance with all laws in all jurisdictions in which it operates***.
>
> Prior to publication of these articles, Cobalt went on the record asking for any documentation that the Financial Times could offer which was at odds with its position. The Financial Times declined Cobalt's repeated requests for supporting documentation. In fact, in the course of these communications, Cobalt informed the Financial Times of certain egregious, demonstrably false allegations that it provided to Cobalt.
>
> Cobalt began its investigation into its Angola business relationships in 2007. Cobalt has based its decisions and actions on the results of these extensive investigations and will continue to maintain rigorous due diligence in all of its worldwide activities. ***Cobalt remains confident that it has not violated any US or Angolan Law and will vigorously defend its reputation and legal rights in this matter***.

25.    On May 1, 2012, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the first quarter ended March 31, 2012. For the quarter, the Company announced a net loss of $37 million, or $0.09 per basic and diluted share, compared to a net loss of $16 million, or $0.05 per basic and diluted share, for the first quarter of 2011.

26.    Also on May 1, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On July 31, 2012, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the second quarter ended June 30, 2012.  For the quarter, the Company announced a net loss of $141 million, or $0.35 per basic and diluted share, compared to a net loss of $19 million, or $0.05 per basic and diluted share, for the second quarter of 2011.  The quarter included $99 million, or $0.24 per share, in charges for the impairment of expenditures associated with the Ligurian exploration prospect including $42 million in leasehold expenditures and $57 million in drilling related-expenditures for the Ligurian #1 and Ligurian #2 exploratory wells. Of the $99 million in charges, $69 million was incurred in prior quarters.

28.     Also on July 31, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On October 30, 2012, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the third quarter ended September 30, 2012. For the quarter, the Company announced a net loss of $39 million, or $0.10 per basic and diluted share, compared to a net loss of $47 million, or $0.12 per basic and diluted share, for the third quarter of 2011.

30.     Also on October 30, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q

contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On February 26, 2013, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2012. For the fourth quarter, the Company announced a net loss of $67 million, or $0.16 per basic and diluted share, compared to a net loss of $51 million, or $0.13 per basic and diluted share, for the fourth quarter of 2011. Cobalt reported a net loss of $283 million, or $0.70 per basic and diluted share, for the year ended December 31, 2012, compared to a net loss of $134 million, or $0.35 per basic and diluted share, for the same period in 2011.

32.     Also on February 26, 2013, the Company filed an annual report for the year ended December 31, 2012 on a Form 10-K with the SEC signed by, among others, defendants Bryant and Wilkirson and reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-K contained SOX certifications signed by defendants Bryant and Wilkirson stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     The 2012 Form 10-K also specifically noted the SEC's investigation into the Company's operations in Angola, stating:

> In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group. In March 2011, the SEC commenced an informal inquiry into these allegations. To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have. Since such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry. In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola. ***We are fully cooperating with the SEC***

*and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA.*

34.    On April 30, 2013, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the first quarter ended March 31, 2013. For the quarter, the Company announced a net loss of $128.1 million, or $0.31 per basic and diluted share, compared to a net loss of $36.5 million, or $0.09 per basic and diluted share, for the first quarter of 2012. The current quarter included $66 million or $0.16 per share for the impairment of expenditures associated with the Cameia-2 DST. Of these expenditures, $34 million were incurred in earlier periods.

35.    Also on April 30, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.    On July 30, 2013, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the second quarter ended June 30, 2013. For the quarter, the Company announced a net loss of $79 million, or $0.19 per basic and diluted share, compared to a net loss of $141 million, or $0.35 per basic and diluted share, for the second quarter of 2012. The quarter included $17 million, or $0.04 per share for the impairment of expenditures associated with the Diaman #1 well, and $16 million, or $0.04 per share for the impairment of expenditures associated with the Cameia-2 DST.

37.      Also on July 30, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.      On October 29, 2013, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the third quarter ended September 30, 2013. For the quarter, the Company announced a net loss of $160 million, or $0.39 per basic and diluted share, compared to a net loss of $39 million, or $0.10 per basic and diluted share, for the third quarter of 2012. The quarter included $108 million, or $0.27 per share for the impairment of expenditures, including $94 million associated with the Ardennes #1 exploratory well and related prospect leases.

39.      Also on October 29, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

40.      On February 27, 2014, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013.  For the fourth quarter, the Company announced a net loss of $222 million, or $0.55 per basic and diluted share, compared to a net loss of $67 million, or $0.16 per basic

and diluted share, for the fourth quarter of 2012. The fourth quarter included $139 million, or $0.34 per share for the impairment of expenditures, including approximately $107 million associated with the Aegean #1 exploratory well, Aegean related prospect leases and other Gulf of Mexico leases, and approximately $32 million associated with exploration in Angola. Cobalt reported a net loss of $589 million, or $1.45 per basic and diluted share, for the year ending December 31, 2013 compared to a net loss of $283 million, or $0.70 per basic and diluted share, for the same period in 2012.

41.     On February 27, 2014, the Company filed an annual report for the year ended December 31, 2013 on a Form 10-K with the SEC signed by, among others, defendants Bryant and Wilkirson and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-K contained SOX certifications signed by defendants Bryant and Wilkirson stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     The 2013 Form 10-K also specifically noted the SEC's investigation into the Company's operations in Angola, stating:

> In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group. In March 2011, the SEC commenced an informal inquiry into these allegations. To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have. Since such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry. In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola. *We are fully cooperating with the SEC and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA*.

43.    On May 1, 2014, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the first quarter ended March 31, 2014. For the quarter, the Company announced a net loss of $57 million, or $0.14 per basic and diluted share, compared to a net loss of $128 million, or $0.31 per basic and diluted share, for the first quarter of 2013. Capital and operating expenditures (excluding changes in working capital) for the quarter ending March 31, 2014 were approximately $178 million. Cash, cash equivalents, and investments at the end of the first quarter were approximately $1.6 billion. This includes about $262 million designated for future operations held in escrow and collateralizing letters of credit, but excludes approximately $76 million in the TOTAL drilling fund for the Gulf of Mexico.

44.    Also on May 1, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.    On July 30, 2014, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the second quarter ended June 30, 2014. For the quarter, the Company announced a net loss of $79 million, or $0.19 per basic and diluted share, compared to a net loss of $141 million, or $0.35 per basic and diluted share, for the second quarter of 2012. The current quarter included $17 million, or $0.04 per share for the impairment of expenditures associated with the Diaman #1 well, and $16 million, or $0.04 per share for the impairment of expenditures associated with the Cameia-2 DST.

46.    Also on July 30, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Bryant, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Bryant and Wilkirson, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

47.    The statements referenced in ¶¶ 21 – 46 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and compliance policies, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company conducted certain business activities in its Angolan operations in violation of the Foreign Corrupt Practices Act ("FCPA"); and (2) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**THE TRUTH IS REVEALED**

48.    On August 5, 2014, Cobalt disclosed in a filing with the SEC Form 8-K that it had received a notice from the Securities and Exchange Commission indicating the agency will bring an enforcement action against the Company over its Angolan operations.  Specifically, the Company disclosed:

> As previously disclosed, the Company is currently subject to a formal order of investigation issued in 2011 by the U.S. Securities and Exchange Commission (the "SEC") related to its operations in Angola. See the discussion under the caption "Risk Factors—We may be exposed to liabilities under the U.S. Foreign Corrupt Practices Act, and any determination that we violated the U.S. Foreign Corrupt Practices Act could have a material adverse effect on our business" in the Company's Annual Report on Form 10-K for the year ended December 31, 2013 for more information.

In connection with such investigation, on the evening of August 4, 2014, the Company received a "Wells Notice" from the Staff of the SEC stating that the Staff has made a preliminary determination to recommend that the SEC institute an enforcement action against the Company, alleging violations of certain federal securities laws. In connection with the contemplated action, the Staff may recommend that the SEC seek remedies that could include an injunction, a cease-and-desist order, disgorgement, pre-judgment interest and civil money penalties. The Wells Notice is neither a formal allegation nor a finding of wrongdoing. It allows the Company the opportunity to provide its reasons of law, policy or fact as to why the proposed enforcement action should not be filed and to address the issues raised by the Staff before any decision is made by the SEC on whether to authorize the commencement of an enforcement proceeding. The Company intends to respond to the Wells Notice in the form of a "Wells Submission" in due course.

The Company has fully cooperated with the SEC in this matter and intends to continue to do so. The Company has conducted an extensive investigation into these allegations and the receipt of the Wells Notice does not change the Company's belief that its activities in Angola have complied with all laws, including the U.S. Foreign Corrupt Practices Act. The Company is unable to predict the outcome of the SEC's investigation or any action that the SEC may decide to pursue.

49.     On the news, shares in Cobalt fell $1.75 per share, or 10.96%, to close at $14.22 on August 5, 2014 on extremely heavy trading volume.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Cobalt securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

51.    The members of the Class are so numerous that joinder of all members is impracticable.    Throughout the Class Period, Cobalt securities were actively traded on the NYSE.    While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.    Record owners and other members of the Class may be identified from records maintained by Cobalt or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.    Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Cobalt;

- whether the Individual Defendants caused Cobalt to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Cobalt securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

55.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

56.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Cobalt securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Cobalt securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

57.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

58.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Cobalt securities; and (iii) cause Plaintiff and other members of the Class to purchase Cobalt securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Cobalt securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Cobalt's finances and business prospects.

62.    By virtue of their positions at Cobalt, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Cobalt, the Individual Defendants had knowledge of the details of Cobalt internal affairs.

64.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Cobalt.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Cobalt's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Cobalt securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Cobalt's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased Cobalt securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.    During the Class Period, Cobalt securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Cobalt securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Cobalt securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Cobalt securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

68.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.    During the Class Period, the Individual Defendants participated in the operation and management of Cobalt, and conducted and participated, directly and indirectly, in the conduct of Cobalt's business affairs.  Because of their senior positions, they knew the adverse non-public information about Cobalt's misstatement of income and expenses and false financial statements.

70.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cobalt's financial condition and results of operations, and to correct promptly any public statements issued by Cobalt which had become materially false or misleading.

71.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cobalt disseminated in the marketplace during the Class Period concerning Cobalt's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cobalt to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Cobalt within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cobalt securities.

72.    Each of the Individual Defendants, therefore, acted as a controlling person of Cobalt.  By reason of their senior management positions and/or being directors of Cobalt, each of

the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Cobalt to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Cobalt and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cobalt.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 5, 2014

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & FRIEND**

By: */s/ Sammy Ford IV*
Sammy Ford IV
Federal Bar Number: 950682
Texas Bar Number: 24061331
800 Commerce Street

{00139143;1 }                                        23

Houston, TX 77002
Telephone: 713-222-7211
Facsimile: 713-225-0827

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
fmcconville@pomlaw.com

And,

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*